Good morning, Illinois Appellate Court, 1st District Court is now in session, the 4th Division, the Honorable Justice Robert E. Gordon presiding, case number 17-3021, People v. Gregory Montgomery. Good morning, gentlemen, and with the lawyers who are going to argue this case, please introduce yourself to the court. Good morning, Your Honor. Mike Orenstein, State Appellate Defender for Defendant Appellate Gregory Montgomery. Good morning, Your Honors. My name is John Nowak. I'm an Assistant State's Attorney representing the people of the state of Illinois. Okay, Mr. Orenstein, are you going to reserve some time for rebuttal? Yes, five minutes, please. Okay, let's proceed. Good morning, Your Honors. Terry v. Ohio called a frisk, a serious intrusion upon the sanctity of the person, which may inflict great dignity and arouse strong resentment, and is not to be taken lightly. Here, my middle-aged client was doing nothing more than biking on a sidewalk, slowly. Not a soul is nearby. Two officers see him, they get out, they spotlight his eyes. He gets off the bike, he evades them, and he runs. They chase. They see him toss something from his pocket, apparently a wallet. They fear that he is armed. He soon trips and falls. He is then handcuffed, offering no resistance. Unable to stand by himself, he is helped up by the officers. Still offering no resistance, he is frisked, yielding a gun. In a suppression hearing, the state called the surveillant Terry's stop. The judge, disregarding Terry, found probable cause, as my client was biking on the sidewalk. Later, my client was convicted of gun possession. Here, the parties dispute two issues. One, whether my client's sidewalk cycling created probable cause for a custodial search, and two, whether officer safety concerns created grounds for a Terry frisk. The first issue, probable cause, rests on his framing. The state focuses on what my client did or did not do. As it notes, an ordinance prohibits multi-block sidewalk cycling. As it also notes, no evidence shows how far my client cycled. So it calls my argument speculative. If the state's framing is right, it wins. I cannot show that my client cycled under a block. But the state's framing is wrong. Under people v. Grant, the question is not what my client did, but what the officers saw. And Officer Pizzo said what he saw. He saw my client cycling on a sidewalk near the arrest scene, and video footage corroborated his testimony. Because he only saw my client near a single intersection, he lacked probable cause to suspect multi-block cycling. Counsel, I have a question. The record seems to be absent with regards to facts about how long they observed the defendant on a bicycle. I think the record is not lacking because Officer Pizzo said that he first saw my client near the arrest scene at that intersection. Okay. So do we know how long the officers were observing him? Where was he coming from? How long was he on the sidewalk? My client was coming on the sidewalk, and the officers were in their car, and they spotted him, and they got out right away. I couldn't tell you which direction each one was going. Okay. And then you say that in the code, it indicates that you can ride on the sidewalk if you're doing multi-block cycling? In other words, here's what the code says. You can come out of your house, your apartment, or your business, or whatever you want, and cycle on the sidewalk to the nearest intersection. At that point, you must enter the street. So that's what I mean by multi-block cycling. You cannot cycle two consecutive blocks on the sidewalk, but you can cycle within a block on the sidewalk. Okay. And how close was your client at the time when the officers stopped him to an intersection? How close was he to the officers? No, to the intersection. The nearest intersection. It's been a few weeks since I've seen the video, probably maybe 15, 20 feet, I think, roughly. Okay. Counsel, I'd like to ask you something. I hope my internet doesn't break up. I've read your brief, and even if the police officers didn't have probable cause to arrest this gentleman for riding on the sidewalk, if you see somebody who's obviously grown riding a bike on a sidewalk, don't you at least have reasonable suspicion to stop him to see if he is legitimately just riding on one block? And then once he backs up and starts running from you and appears to be reaching for something, and I think that the officer said, don't reach for your pocket and tosses something, does that amount to then a Terry type of suspicion for the officer to search him for his own safety? And my biggest issue is, from what you've written, is just because they handcuffed him before they pat him down, why does that negate their right to pat him down on a Terry stop, based upon what they saw? Sure, Your Honor, so a couple of things. I think based on my probable cause argument, I would say that for the same reasons that they lacked probable cause to, I mean, they lack reasonable suspicion just based on the cycling itself, because they could have simply have waited, you know, 15 seconds and seen if he was going to go on the next sidewalk or not. But I think that's really an academic question, because you point out once he starts running, once he tosses his wallet, they do have reasonable suspicion to suspect possession of some sort of contraband. And so they have a right to make a Terry stop. So then you get to the question of a frisk. And so what we're arguing is that no, the officers did not yet have the right to do a frisk. And the reason is, is that the same reason that this court found that people be brown, people who found that all had found grounds to stop the defendant given his play from a burglary scene, but it found a bad frisk for three alternative reasons. One had to do with reasonable suspicion. One had to do with the excessiveness of the Terry pat down. But the third, which is what we rely on, is that the quote, and I'm quoting, the immediate handcuffing of the defendant upon being taken into custody, eliminated the need to frisk him for officer safety. So that's where we're coming from. Now, I would acknowledge that my argument begs a question. And that question is, well, what happens? So you handcuff the client, the defendant, and the officers are safe. But what happens if, hold on one second, I'm sorry. So what happens when it's time to take off the handcuffs? And my answer to that is this, a frisk based on speculative future danger is premature. And for the authority for that, I looked at Terry v. Ohio. Let me stop you for just one second, because I don't think one part of my question you did not answer. He's running, he tosses something, he reaches up, according to what I've read, toward his jacket pocket. And the officer says, don't reach into your pocket. Right. Now, are you telling me that after they cuff him, they don't still have the right to pat him down to see what he was reaching for, for their safety? I am saying that because... That's what I wanted you to say. Okay, so I apologize for missing that part of the question. So there's two possible reasons that they might want to pat him down. One is to see if they can find evidence, including evidence. Terry does not allow that. Terry is very clear that the pat down is only for officer safety. So that's the first thing. The second reason they might want to pat him down is to ensure their own safety, which is the purpose of the pat down. So what Brown says is that once he is handcuffed, they have assured his own safety. But you said they're going to let him out, counsel. Well, that's what I was... They're going to let him out of the cuff. So that's what I was getting to. So let me answer the get out part of it, if that's okay. So the answer is that they might have been able to frisk him a little later, but at that point, it was premature. So, pardon me one second, my mouth is really dry, I'm sorry. So I think to explain that, I need to talk about Terry v. Ohio. In Terry, the court allowed a stop for brief questioning, but it also emphasized that it needed a balanced stop and frisk against a citizen's dignity. And it says twice that for a frisk, a subject must be presently dangerous. Now when a subject is handcuffed, that subject is not presently dangerous, possibly may be dangerous in the future. But the purpose of a Terry stop is to question the suspect. Now some things could happen in questioning. The questioning might yield probable cause and then they can arrest and there's no reason for a Terry stop. Or after the questioning, the officer might still have a reason to be scared and that would support a frisk. But the questioning might find at that point that the subject is following the law or the subject in fact poses no danger. So in that case, there would not be a reason for a frisk. So the frisk was premature, is what we're saying. The officer, having assured that at least a temporary safety by handcuffing should have conducted the purpose of the Terry stop, which is a questioning. And then only later might have the Terry stop been just, I mean the frisk, been justified. Let me ask you this. The officers see somebody riding on the sidewalk. Right. And they don't know how long he's been on that sidewalk, so they don't know whether he's violated the ordinance or not. Right. Would you agree that they certainly have a right to stop and talk to him? I think it's pretty marginal. I mean, I think it's pretty marginal because, well, they could stop and talk to him, but they can't tell him, they can't, they can't. No, no, no, but they have a right. They can stop and say hi. They have a right to make a determination of whether he violated the ordinance and once he starts running away, once he starts running away, it's a whole new ballgame, isn't it? Well, I mean, so I guess, arguably, you could say they have the right to stop him. I mean, I might disagree, but it doesn't matter because they clearly had the right to stop him when he was running away. So we agree that at the time of the stop and frisk, they had the right to do a Terry stop. So our argument is strictly that, but for a Terry frisk, it's not enough to have the right to stop. They have to show that he's both armed and dangerous. And our argument is that while he can't huff, he is not dangerous. No, no, but what is dangerous is when somebody starts running away, you know, that gives the police the probable cause to find out why he's running away. I think it's a reasonable suspicion to find out why he's running away. Yeah, so they do, they have the right to stop him. They absolutely do. But for a frisk, he must be presently dangerous. And at the time when he's running, there's no frisk. At the time he's handcuffed, he's not dangerous. That's the argument. I hate to keep pressing you on that, but you keep saying things that raise another question. If they stop him and they've cuffed him, you're saying they can't frisk him because he's not dangerous? Not yet. Right. But so, if they say, do you have a gun? And he says no. Then they, I mean, are you saying they uncuff him and then frisk him when he says no? At that point, it might be time to frisk him, but he might say yes. And the next question might be, do you have paperwork for that? Yes, it's in my back pocket. Pull out the back pocket. You got a FOIA card. You have a concealed carry card. At that point, they no longer would have reasonable suspicion that he committed a crime because the gun is legit. And there would have never been a need for a frisk. And Terry talks about how a frisk is not a small deal. It's a serious affront to dignity. So, after the investigation is when they might have needed to frisk if their fear wasn't allayed. Okay, thank you, Mr. Nowak. I want you to please, when you talk, distinguish the case that counsel is relying on, if you can, regarding frisking somebody when they're, after they're caught. I don't have anything else. Thank you, Justice Gordon. Thank you, Mr. Orenstein. Nothing else. Yeah, Justice Reyes. Justice Reyes, do you have any questions? No, no further questions. Okay, let's hear it. So, in summary. Oh, you're still going? I'm sorry. I'll just summarize. The custodial search was improper because the officer-like problem was caused. The frisk was improper because my client was not, at the time of the frisk, progressively dangerous. That is why the state's evidence is the fruit of the poisonous tree, and this court should reverse my client conviction. Thank you. Thank you, Your Honors, and may it please the court again, my name is John Nowak on behalf of the people. This stop in the search was proper. There was a reasonable suspicion for the stop, certainly initially, when the officers saw this defendant, clearly an adult, riding his bicycle on the sidewalk. And when they approached him just for a field interview to get his name and some other information, that reasonable suspicion was heightened when the defendant was evasive, didn't give his name, and quickly dropped his bike and went on a headlong flight, fled from the officers on foot. They have reasonable suspicion now to stop him. And while he's fleeing from the police, the police officers see him with his right hand reaching towards his right pocket of his jacket. And based on their observation, based on their experience, they were reasonably concerned that this defendant had a firearm. And so when they eventually caught up to defendant, they immediately handcuffed and searched defendant for their own safety to see if he did in fact have a weapon. And he did. Now as for Brown, speaking to Justice Lampkin's question. The case of Brown, which is the thinnest of reads to make the argument the defendant is making, which is that defendants arguing that Brown held that handcuffing a defendant, then prohibits a Terry frisk for a weapon. That is simply not the law. Brown cited no authority for it. It put that in there in a single sentence in paragraph 27. The bulk of Brown had to do with the fact that in that case, it was a general search. Those officers in Brown did not see the defendant fleeing from them grabbing at something in his pocket. They handcuffed that defendant immediately when he exited a building during what was a suspected burglary. They had no reasonable suspicion that that particular defendant was armed. But again, the rule of law that defendant claims is held in Brown about how handcuffing a defendant makes a frisk for a weapon illegal is simply the wrong reading. And there is no authority for that. And in fact, as we cite in our brief, in People v. Collier, an only Supreme Court case decided just around this very same time as Brown, there was no dispute in that case that a defendant who is subject to a Terry stop and handcuffed, that the police officers then have the right, if they have a reasonable suspicion that that defendant is armed and dangerous, to frisk him. It's not a one or the other situation. It's not handcuff the defendant, no Terry frisk if you believe, even if you believe the defendant is armed, or don't handcuff the defendant, even though you think he's armed, and then you may do a frisk. It's permissible and acceptable and legal for the police officers to do both. And this was a textbook example of that. This was by the book, the officers had reasonable suspicion when defendant fled, they saw him reaching for something in his front pocket which they suspected might be a firearm. And so when they apprehended him, they immediately handcuffed him and searched him for their own safety, recover that weapon immediately, that loaded firearm in his pocket. Reasonable suspicion is this court may affirm based on that reason alone. There's no reason for this court to go on to the alternative argument about probable cause but certainly may do so because these defend below defendant admitted that what he was This case may simply be decided based on Terry, because this defendant fled when approached by the police, they have a reasonable suspicion to approach defendant initially when he fled and was reaching for something in his pocket. They then had a reasonable suspicion that this defendant was armed. It's not an either or situation. Police may properly handcuff a person during a Terry stop if they reasonably that person is armed, they may also for stem for a weapon. Any questions. No, thank you. For these reasons and those that are brief we asked this court confirm his conviction and the sentence. Thank you, your honors. Let's hear the rebuttal. Thank you, your honor, two points and it won't take five, and it won't take five minutes. The first, the first one is this, the state says that Brown has no has no authority, no authority can support Brown. Our authority is Terry v. Ohio. Terry v. Ohio says that a subject must not only be armed and dangerous must be presently dangerous. Not saying that's not dangerous sometimes before the frisk or after the frisk. The second thing is a state talk is the state says that people be Collier support supports its argument, but it's in its brief its argument defeats itself. In its brief, it argues that I'm quoting from its brief Collier never questioned the propriety of a Terry frisk after a person was already in handcuffs. The state is right. Collier never consider this question, because it never considered. I'm sorry. Because it never considered this question, it is not authority for the answer. So nothing in Collier undermines Brown's third findings. The state points to no other authority undermines Brown's finding that we cite. So unless there are any other questions, for those reasons, we ask this court reverse and remand. Any further questions? No, thank you. Thanks. Well, thank you. You know, you've given us a very interesting case. You guys have done a very good job on it in your briefs and your arguments and you'll have a decision from us shortly. And the court will be adjourned.